UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WILLIAM MARTINEZ and MARIA
MARTINEZ,

    Plaintiffs,

v.    Case No: 8:18-cv-263-T-36AAS

QBE SPECIALTY INSURANCE
COMPANY,

    Defendant.

**ORDER**

This cause comes before the Court upon Defendant's Motion to Dismiss Counts III-V of Plaintiffs' Amended Complaint (Doc. 6), Plaintiffs' response thereto (Doc. 11), Defendant's reply (Doc. 19), and Plaintiff's Sur-Reply (Doc. 22). In the Motion to Dismiss, Defendant seeks dismissal of Counts III, IV, and V, which allege negligence, because the claims stem from a contractual relationship between the parties and are barred by the economic loss rule. Doc. 6 at 11-13. Defendant further argues that Count III, which alleges that Defendant is vicariously liable for the negligence of another, should be dismissed because Plaintiffs failed to allege the existence of an agency relationship, or facts to support the existence of such a relationship. *Id.* at 13-14. Plaintiffs argue that their negligence claims seek damages that are separate and distinct from the breach of contract claims, and that the allegations are sufficient to support an agency relationship. Doc. 11. For the reasons set forth below, Defendant's motion will be granted.

I.   **BACKGROUND**[1]

Plaintiffs, William and Martina Martinez, owned real property (the "Property") that was insured by Defendant QBE Specialty Insurance Company ("QBE" or "Defendant") pursuant to an insurance policy (the "Policy") which included sinkhole coverage. Doc. 3 ¶¶ 2, 5, pg. 26. The Policy states that in the event of a covered loss, the insurer "will pay the reasonable cost incurred by [the insured] for necessary measures taken solely to protect against further damage." *Id.* at 18.

On March 25, 2013, the Property was damaged, and Plaintiffs reported the damage to Defendant. *Id.* ¶¶ 7-8. Defendant assigned a claim number to the loss and retained SDII Global Corporation ("SDII") to investigate the claim and determine the cause of the damage. *Id.* ¶ 9. SDII concluded that sinkhole activity caused the loss, and prepared a report stating the same. *Id.* ¶ 10. Defendant determined that Plaintiffs' loss was covered and undertook to repair the Property. *Id.* ¶ 11. In doing so, Defendant required Plaintiffs to enter into a subsurface repair contract with its selected firm, SDII, and required the subsurface repairs to be conducted at the Property under SDII's direct monitoring, guidance, supervision, and control. *Id.* ¶¶ 11, 34. The sinkhole remediation and compaction grouting were conducted under SDII's guidance, supervision, and control in January 2014. *Id.* at 37.

However, following the repairs, Plaintiffs observed continuing damage to the Property. *Id.* ¶ 12. Plaintiffs advised Defendant of the ongoing damage and requested that Defendant fulfill the terms of the Policy by paying for the loss. *Id.* ¶¶ 12-13. Defendant refused to pay the benefits to Plaintiff. *Id.* ¶ 14.

---

[1] The following statement of facts is derived from the Amended Complaint (Doc. 3), the allegations of which the Court must accept as true in ruling on the instant Motion. *See Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F.2d 989, 994 (11th Cir. 1983).

Based on the above allegations, Plaintiffs filed the Amended Complaint raising two claims against Defendant for breach of contract and three claims for negligence. *Id.* ¶¶ 16-33, 38-75. Although only the negligence claims are the subject of the instant Motion to Dismiss, Plaintiffs' breach of contract claims are relevant to the analysis. In Count I, Plaintiffs allege that they suffered a covered loss, a repair contract arose by implication of law when Defendant elected to repair the Property, and Defendant breached the repair contract by failing to affect repairs at the Property that restored it to its pre-loss condition, failing to do so in a reasonable time, and failing to work in consultation with Plaintiffs. *Id.* ¶¶ 16-25. In Count II, Plaintiffs allege that Defendant breached the Policy by failing to acknowledge a covered loss and failing to pay Plaintiffs the benefits due under the Policy. *Id.* ¶¶ 26-33.

The remaining counts allege that Defendant was negligent, and they are based on the work by SDII. With respect to Count III, Plaintiffs allege that SDII acted negligently, causing physical damage to the Property and economic harm to Plaintiffs, and that SDII was acting within the course and scope of apparent authority, rendering Defendant vicariously liable for SDII's negligence. *Id.* ¶¶ 41-42. In Count IV, Plaintiffs allege that Defendant owed Plaintiffs a non-delegable duty to ensure that the repairs conducted at the Property were non-negligently monitored, supervised, and instructed by SDII, and that Defendant breached that duty, causing harm to Plaintiffs. *Id.* ¶¶ 55-60. Finally, in Count V, Plaintiffs allege that sinkhole remediation and grouting operations are inherently dangerous activities, Defendant owed Plaintiffs a non-delegable duty to ensure that the repairs conducted at the Property were non-negligently monitored, supervised, and instructed by SDII, and that Defendant breached that duty, causing harm to Plaintiffs. *Id.* ¶¶ 64-75. In response, Defendant filed the instant Motion to Dismiss. Doc. 6.

## II. LEGAL STANDARD

To survive a motion to dismiss, a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient. *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere naked assertions are not sufficient. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff, pleads facts that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.* Therefore, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,' *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)." *Twombly*, 550 U.S. at 555. As a corollary to this, Federal Rule of Civil Procedure 12(e) allows a party to "move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12 (e). Because of the notice pleading standard in federal court, motions for more definite statement are disfavored and should be granted only if the pleading to which the motion is directed is so vague that the respondent cannot reasonably be expected to respond. *Scarfato v. Nat'l Register Corp.*, 830 F. Supp. 1441, 1443 (M.D. Fla. 1993).

## III. DISCUSSION

### A. Motion to Strike

Plaintiffs attached as exhibits to their Response one order by the Pasco County Circuit Court, and one order by the Hillsborough County Circuit Court, as well as the corresponding complaints, motions to dismiss, and responses. Docs. 11-1, 11-2. The complaints in those cases were similar to that here, as were the motions to dismiss. *Id.* In both cases, the courts denied the motions to dismiss. *Id.* In its Reply, Defendant moves to strike these documents, arguing that they fall outside of the four corners of the Amended Complaint and are not central to Plaintiffs' allegations. Doc. 19 at 2.

These documents are submitted as legal authority. Therefore, consideration of them is not improper. Just as a Court may rely on cases pertinent to the one at hand, the Court may consider legal documents and orders issued in other cases. Accordingly, Defendant's request that the documents be stricken is denied. However, the Court notes that because the orders provide no analysis, they shed little light on the instant case.

### B. Economic Loss Rule

The economic loss rule, developed as a means "to address attempts to apply tort remedies to traditional contract law damages," "has its roots in the products liability arena, and was primarily intended to limit actions in the products liability context." *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos., Inc.*, 110 So. 3d 399, 401 (Fla. 2013). The Florida Supreme Court has described the rule as "the fundamental boundary between contract law, which is designed to enforce the expectancy interests of the parties, and tort law, which imposes a duty of reasonable care and thereby encourages citizens to avoid causing physical harm to others." *Id.* (quoting *Casa Clara Condo. Ass'n., Inc. v. Charley Toppino & Sons, Inc.*, 620 So. 2d 1244, 1246 (Fla. 1993)).

Economic losses are, essentially, "disappointed economic expectations," or, in other words, "damages for inadequate value, costs of repair and replacement of [a] defective product or consequent loss of profits—without any claim of personal injury or damage to other property." *Id.* (quoting *Casa Clara*, 620 So. 2d at 1246.

In *Tiara Condominium*, however, the Florida Supreme Court detailed how the economic loss rule has spread over time to be broadly applied outside of products liability cases. *Id.* at 406-07. Reviewing the original purpose of the rule, the court receded from such precedent and held that the economic loss rule would apply "only in the products liability context." *Id.* at 407. However, Justice Pariente, concurring, explained that the holding did "not undermine Florida's contract law or provide for an expansion in viable tort claims" because "[b]asic common law principles already restrict the remedies available to parties who have specifically negotiated for those remedies, and . . . [the court's] clarification of the economic loss rule's applicability does nothing to alter these common law concepts." *Id*. at 408 (Pariente, J. concurring). Justice Pariente explained that a plaintiff bringing a tort claim would still be required to "demonstrate that all of the required elements for the cause of action are satisfied, including that the tort is independent of any breach of contract claim." *Id.* (citing *Lewis v. Guthartz*, 428 So. 2d 222, 224 (Fla. 1982)).

The Middle District has since followed the guidance of Justice Pariente's concurring opinion. *See Mortgage Contracting Services, LLC v. J&S Property Services LLC*, No. 8:17-cv-1566-T-36CPT, 2018 WL 3219386, at *3 (M.D. Fla. July 2, 2018); *Travelers Indemnity Company of Connecticut v. Richard McKenzie & Sons, Inc.*, No. 8:17-cv-2106-T-23CPT, 2018 WL 3155733, at *9 (M.D. Fla. June 28, 2018), *appeal docketed*, No. 18-13172 (11th Cir. July 30, 2018). *See also* the Eleventh Circuit's decisions, *Lamm v. State Street Bank and Trust*, 749 F.3d 938, 947 (11th Cir. 2014) and *Lookout Mountain Wild Animal Park, Inc. v. Stearns Zoological Rescue and Rehab*

*Center, Inc.*, 553 F. App'x 864, 866 (11th Cir. 2014). This Court explained that "the alleged duty in [a plaintiff's] tort claim cannot stem from a contractual relationship between the parties." *Certain Underwriters at Lloyd's of London, UK Subscribing to Policy No. B1230AP56189a14 v. Ocean Walk Resort Condominium Association, Inc.*, No. 6:16-cv-258-Orl-37GJK, 2017 WL 3034069 (M.D. Fla. July 18, 2017).

Plaintiffs contend that they have two distinct types of claims: breach of contract claims stemming from Defendant's failure to either return their property to its pre-loss condition or to tender the amounts due and owing under the Policy, and negligence claims for the negligent acts of Defendant's agents during the performance of Defendant's contractual duties, which resulted in separate physical and economic damages. Doc. 11 at 14. Plaintiffs posit that they have sufficiently alleged claims that Defendant's agent breached the duty of care for professionals, consultants, and engineers. *Id.* at 8-10.

Plaintiffs rely on *United States Fire Insurance Company v. J.S.U.B., Inc.*, 979 So. 2d 871 (Fla. 2007), to argue that their negligence claims are separate from their breach of contract claims. Doc. 11 at 13-15. In *JSUB*, the plaintiff contracted to build houses, and a subcontractor used poor soil and improper soil compaction testing that caused damage to the foundations, drywall, and other interior portions of the homes, which was discovered after delivery of the houses. *Id.* at 875. The issue in the case concerned whether a standard form commercial general liability policy covered a subcontractor's defective work. *Id.* In evaluating whether the subcontractor's faulty work was "property damage" under the policy, the court explained that "faulty workmanship or defective work that has damaged the otherwise nondefective completed project has caused 'physical injury to tangible property' within the plain meaning of the definition of the policy," but that if no damage existed "beyond the faulty workmanship or defective work, then there may be

no resulting 'property damage.' " *Id.* at 889. The court further noted a distinction between a claim for the "costs of repairing or removing defective work," which would not constitute a claim for property damage, and "a claim for the costs of repairing damage caused by the defective work," which would be a claim for property damage. *Id.*

The insurance company in *JSUB* raised the economic loss rule as a defense, but the court explained that the doctrine "determine[d] what cause of action [was] available to recover economic losses—tort or contract—but not whether an insurance policy cover[ed] a claim, which depend[ed] on the policy language." *Id.* at 889 n.11. Although the home buyers filed an action against the builder alleging both negligence and breach of contract, it is not clear what was the basis for their negligence claim, and that action was not under review in *JSUB*. *Id.* at 875. Instead, *JSUB* was an action filed by the builder against its insurer for a declaratory judgment regarding coverage. *Id.* at 876. Thus, Plaintiffs reliance on the case and assertion that it "clearly shows how a breach of contract action may coexist with a negligence cause of action" is misplaced. Doc. 11 at 14. Because the decision in *JSUB* does not discuss whether or when negligence claims are distinct from contract claims, it is not persuasive.

Here, Plaintiffs' negligence claims allege that Defendant is liable to Plaintiffs for SDII's professional negligence, because SDII was Defendant's agent, Defendant's duty under the Policy was not delegable, or Defendant's duty was not delegable because it was an inherently dangerous activity. Doc. 3 ¶¶ 38-75. The Florida Supreme Court has held that a professional negligence claim against a professional may constitute a tort independent of a breach of contract claim. *Moransais v. Heathman*, 744 So. 2d 973 (Fla. 1999), *abrogated by Tiara*, 110 So. 3d at 399.

This professional negligence exception to the economic loss rule was originally developed in *Moransais*, in which the Florida Supreme Court addressed whether a purchaser of a home had

a cause of action for professional malpractice against an individual engineer who was an employee of the engineering corporation who performed engineering services. 744 So. 2d at 974. In that case, the plaintiff hired an engineering firm to inspect a home, and the inspection was performed by two engineers within the firm. *Id.* The plaintiff purchased the home, relying on the inspection, but later learned that defects existed that should have been discovered and that rendered the home uninhabitable. *Id.* After learning of the defects, the plaintiff filed an action alleging breach of contract against the engineering firm, and professional negligence against the individual engineers. *Id.*

In evaluating whether the professional malpractice claims could stand, the court recognized that professionals—such as engineers—have distinct duties requiring them to provide services in accordance with the standard of care used by similar professionals in the community under similar circumstances, regardless of whether they performed those services as employees of a corporation. *Id.* at 976, 979. The court distinguished a contract for professional services from other contracts, stating that "[w]hile parties to a contract to provide a product may be able to protect themselves through contractual remedies, we do not believe the same may be necessarily true when professional services are sought and provided." *Id.* Ultimately, the court held that the economic loss rule did not bar a professional negligence claim against the engineers, stating that it "recogniz[ed] that the economic loss rule may have some genuine, but limited, value in [Florida's] damages law, [the court] never intended to bar well-established common law causes of action, such as those for neglect in providing professional services." *Id.* at 983. The court was particularly concerned with professional providers' independent obligations, indicating that it would be "questionable whether a professional, such as a lawyer, could legally or ethically limit a client's remedies by contract in the same way that a manufacturer could do with a purchaser in a purely

commercial setting." *Id.*

The holding in *Moransais* has since been applied in other cases where the economic loss rule was raised as a defense, and been found to permit certain professional malpractice cases notwithstanding a contract for services. *See*, *e.g.*, *Auto-Owners Ins. Co. v. Triple P. Const. Inc.*, No. 4:08cv154-RH/WCS, 2009 WL 1457115, at *1 (N.D. Fla. May 23, 2009) (denying a motion to dismiss a professional negligence claim and concluding that the economic loss rule did not apply because the law imposes a duty on a professional independent from any contractual obligation). Here, Plaintiffs do not benefit from the cases indicating that professional negligence is a tort independent of a contract. Importantly, Plaintiffs' action is against the insurance company, and not the engineering firm or the individuals who performed the work. The allegations of the Amended Complaint do not indicate how or why the standard for professionals, consultants, and engineers could be imputed to Defendant. In *Moransais*, the Florida Supreme Court focused on the individuals' responsibility based on their profession, indicating that this was the basis for the independent tort. The allegations of Plaintiffs' Amended Complaint do not state professional negligence claims against Defendant based on a profession.

The allegations of the Amended Complaint indicate that the basis for Plaintiffs' negligence claims stem from the duty owed by Defendant under the contract, not a separate duty. *Cf. Kaloe Shipping Co. Ltd. v. Goltens Serv. Co., Inc.*, 778 F. Supp. 2d 1346, 1356 (S.D. Fla 2011) (granting summary judgment on a negligence count because the claim alleged the defendant provided negligent workmanship, used defective products, and failed to warn of defects concerned the same duties that were required under the contracts). In connection with their breach of contract claim, for example, Plaintiffs allege that "[p]urportedly in accordance with the terms of the subject insurance policy, Defendant undertook a repair of Plaintiffs' home." Doc. 3 ¶ 11. Based on this

election to repair, in Count I, Plaintiffs allege that "a new repair contract arose by implication of law," and breach of that contract led to breach of the Policy. *Id.* ¶¶ 19, 21.

Thus, based on the allegations of the Amended Complaint, to fulfill its obligations under the Policy, Defendant directed Plaintiffs to enter into a subsurface repair contract with SDII for the property, and Plaintiffs negligence claims stem from SDII's performance. Indeed, pursuant to section 627.7072, Florida Statutes, Defendant was required to engage a professional engineer to conduct testing "to determine the presence or absence of sinkhole loss or other cause of damage within reasonable professional probability and for the professional engineer to make recommendations regarding necessary building stabilization and foundation repair." These allegations, for example, demonstrate that Plaintiffs' negligence claims stem from Defendant's performance under the Policy and the allegations as to negligence are not independent of the allegations pertaining to breach of contract. To state an independent tort claim, Plaintiffs must allege breach of a duty other than that already owed under the Policy. Counts III, IV, and V of the Amended Complaint will be dismissed because Plaintiffs' negligence claims are barred by the economic loss rule.

### C. Agency

In Count III of the Amended Complaint, Plaintiffs allege that Defendant is vicariously liable for SDII's conduct based on a theory of apparent authority. Doc. 3 ¶¶ 38-51. Plaintiffs contend that their allegations that: (1) Defendant required Plaintiffs to enter into a subsurface repair contract in accordance with SDII's recommendations, and that the repairs be under SDII's monitoring, guidance, supervision, and control; (2) Plaintiffs did so based on their reliance on Defendant's representations; and (3) Plaintiffs' reliance was detrimental because they were harmed by SDII's negligence are sufficient to allege apparent authority. Doc. 11 at 11-12. Defendant responds that it hired SDII in reliance on Florida law, Plaintiffs failed to allege facts to support an agency relationship, and it had no authority over SDII.

Allegations pertaining to agency do not establish a cause of action, but instead a theory of liability. *Gharfeh v. Carnival Corp.*, 309 F. Supp. 3d 1317, 1322 (S.D. Fla. 2018). Because of this, a plaintiff who seeks to hold a party liable as a principal, responsible for the negligence of a purported agent, must sufficiently allege an agency relationship in addition to the elements of the underlying negligent act. *Id.* (citing *Rojas v. Carnival Corp.*, 93 F. Supp. 3d 1305, 1311 (S.D. Fla. 2015)). Because the Court finds that Plaintiffs have not alleged a negligence claim independent of their contract claims, the Court need not address this issue. Nonetheless, a review of the Amended Complaint indicates that Plaintiffs have not sufficiently alleged a theory of apparent agency.

"Apparent agency 'arises when the principal allows or causes others to believe that an individual has authority to conduct the act in question, inducing their detrimental reliance.' " *Fireman's Fund Ins. Co. v. Landstar Ranger, Inc.*, No. 3:11-cv-1241-J-37MCR, 2012 WL 12903876, at *2 (M.D. Fla. Nov. 26, 2012) (quoting *Borg-Warner Leasing v. Doyle Elec. Co.*, 733 F.2d 833, 836 (11th Cir. 1984)). To allege a claim based on apparent agency, a plaintiff must allege: (1) a representation by the purported principal; (2) reliance on that representation by a third party; and (3) a change in position by the third party in reliance on such representation. *Hogan v. Provident Life & Acc. Ins. Co.*, 665 F. Supp. 2d 1273, 1284 (M.D. Fla. 2009) (citing *Rubin v. Gabay*, 979 So. 2d 988, 990 (Fla. 4th DCA 2008)). "With respect to the first element, the claimant must show that the purported principal represented or acted in such a way as to lead him to believe that the purported agent, was, in fact, his agent." *2P Commercial Agency S.R.O. v. SRT USA, Inc.*, No. 2:11-cv-652-FtM-29SPC, 2013 WL 126367, at *1 n.3 (M.D. Fla. Jan. 10, 2013) (citing *Vermeulen v. Worldwide Holidays, Inc.*, 922 So. 2d 271, 275 (Fla. 3d DCA 2006)).

As an initial matter, Plaintiffs are correct that Defendant's argument regarding the degree

of control is misguided. Control is relevant to a claim based on an actual agency relationship. *See, e.g.*, *Felner v. Cameron*, No. 2:10-cv-155-FtM-99SPC, 2012 WL 1648886, at *4 (M.D. Fla. May 10, 2012) (setting forth the allegations required to state a claim for actual agency). Thus, Defendant's contention that Count III should be dismissed because Plaintiffs did not make any allegations regarding its control over SDII is incorrect.

However, Plaintiffs have not alleged a representation by Defendant that would lead Plaintiffs to believe that SDII was their agent. Plaintiffs allegations that Defendant required Plaintiffs to enter into a contract with SDII do not equate to allegations that it was acting on Defendant's behalf. Accordingly, Count III must be dismissed for failure to adequately allege an agency relationship.

**Accordingly, it is ORDERED:**

1. Defendant's Motion to Dismiss Counts III-V of Plaintiff's Amended Complaint (Doc. 6) is **GRANTED**.

2. Counts III, IV, and V of Plaintiffs' Amended Complaint (Doc. 3) are **DISMISSED** without prejudice.

3. Plaintiffs are granted leave to file a Second Amended Complaint within **FOURTEEN (14) DAYS** from the date of this Order, which corrects the deficiencies noted herein. If a Second Amended Complaint is not filed within the time allotted, this case will proceed on Counts I and II of the Amended Complaint.

**DONE and ORDERED** on September 12, 2018.

Charlene Edwards Honeywell
United States District Judge

Copies to: All Counsel of Record
All *Pro Se* Parties